UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRADY SCHMITENDORF**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**JUICY'S VAPOR LOUNGE INC.**, an Oklahoma corporation,<br><br>Defendant. | Case no.<br><br>**CLASS ACTION**<br><br>**JURY DEMAND** |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Brady Schmitendorf ("Plaintiff" or "Plaintiff Schmitendorf") brings this Class Action Complaint and Demand for Jury Trial against Defendant Juicy's Vapor Lounge Inc. ("Defendant" or "Juicy's Vapor Lounge"), to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited telemarketing text messages to consumers who registered their phone numbers on the Do Not Call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by Defendant's actions. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Schmitendorf is a resident of Emporia, Kansas.

2. Defendant Juicy's Vapor Lounge is an Oklahoma corporation incorporated and headquartered at Ponca City, Oklahoma. Juicy's Vapor Lounge conducts business throughout this District, Kansas, and the United States.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant because Defendant conducts business in this District and directed telemarketing texts to Plaintiff here in connection with that business.

5. The venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff resides here and the wrongful conduct leading to this case was directed by Defendant to the Plaintiff into this District.

**INTRODUCTION**

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

2

9. When Congress enacted the TCPA in 1991, it found that American were receiving more than 18 million calls every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, American were receiving more than 100 million calls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in June 2022 alone, at a rate of 144.3 million calls per day. www.robocallindex.com (last visited July 5, 2022)

14. The FCC also has received an increasing number of complaints about unwanted calls, with over 155,000 complaints in 2020, and 160,000 complaints in 2021. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules*

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

3

*and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

17. Defendant Juicy's Vapor Lounge sells tobacco products including e-cigarettes, vapers, vaper liquids and other related products to consumers in Kansas and other states across the U.S.[3]

18. Defendant sends telemarketing text messages to consumers across the U.S. soliciting the consumers to purchase their products.

19. Defendant sends telemarketing text messages to consumers whose numbers are registered on the Do Not Call registry, who have never provided their phone number to Defendant, who never consented to receive phone calls from the Defendant and continues to send the telemarketing messages to their phones even after the consumers have requested the Defendant to stop sending solicitation material to their phone numbers, like in Plaintiff Schmitendorf's case.

20. In response to these unsolicited telemarketing text messages, Plaintiff Schmitendorf files this lawsuit seeking monetary and injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF SCHMITENDORF'S ALLEGATIONS

21. Plaintiff Schmitendorf's cell phone number has been registered with the DNC since October 20, 2021.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://juicysvaporlounge.com/

22. Plaintiff Schmitendorf uses his cell phone number for personal use only.

23. In May 2022, Plaintiff started receiving telemarketing text messages promoting Defendant's e-cigarette related products to Plaintiff.

24. On May 3, 2022, at 1:40 PM, Plaintiff received a text message on his cell phone from the phone number 916-529-4200, soliciting Plaintiff to purchase Defendant's products at a discount.



25. On May 3, 2022, at 3:28 PM, Plaintiff received another text message on his cell phone from the same phone number 916-529-4200, soliciting Plaintiff to purchase Defendant's products. The solicitation text said, "Reply STOP to opt out.". Plaintiff responded to this text message by sending "STOP" back.

26. On May 3, 2022, at 7:43 PM, despite making a STOP request, Plaintiff again received the same solicitation text from Defendant using the same phone number 916-579-4200.

 

27. On May 4, 2022, at 6:01 AM, Plaintiff received yet another solicitation text from Defendant using the same phone number 916-579-4200. Plaintiff again responded to the text message with STOP, hoping to get the Defendant to stop sending telemarketing text to Plaintiff's cell phone.



28. On May 6, 2022, at 9:12 AM, Plaintiff received another telemarketing text from Defendant Juicy's Vapor Lounge using the phone number 855-710-0901 to his cell phone soliciting Plaintiff to purchase Defendant's products, despite Plaintiff's multiple stop requests to the Defendant.

29. On May 10, 2022, at 11:11 AM, Plaintiff received another telemarketing text from Defendant Juicy's Vapor Lounge using the phone number 855-710-0901 to his cell phone soliciting Plaintiff to purchase Defendant's products, despite Plaintiff's multiple stop requests to the Defendant.

7

 

30. On May 18, 2022, at 9:15 AM, Plaintiff received another telemarketing text from Defendant Juicy's Vapor Lounge using the phone number 855-710-0901 to his cell phone soliciting Plaintiff to purchase Defendant's products, despite Plaintiff's multiple stop requests to the Defendant.

8



31.     On July 1, 2022, at 12:00 PM, Plaintiff received yet another telemarketing text from Defendant Juicy's Vapor Lounge using the same phone number 855-710-0901 to his cell phone soliciting Plaintiff to purchase Defendant's products, despite Plaintiff's multiple stop requests to Defendant. This telemarketing text was to promote Defendant's "4th of July Sale".

9



32. The telemarketing text Defendant sent to Plaintiff's cell phone on May 3, and May 4, 2022, contained a shortened link, "https://tinyurl.com/yxltzswu". On clicking this hyperlink, it redirects users to a static webpage with Defendant's banner:

Buy-One-Get-One-Free Juicy's Premium E-liquids all day long!

[4]

---

[4] https://eyeratereviews.com/content?text=Buy-One-Get-One-Free%20Juicy%27s%20Premium%20E-liquids%20all%20day%20long!%20&image=

10

33. The promotional images used by Defendant Juicy's Vapor Lounge in the solicitation text messages sent to Plaintiff's cell phone for their promotional offer, "BOGO" has also been posted on Defendant's Instagram account.



34. Defendant also posted an offer almost the same as the promotional offer for the "4th of July Sale" that Defendant sent to Plaintiff's cell phone on July 1, 2022, on their Instagram account just before the July 4, 2021:

11



35. Plaintiff Schmitendorf never consented to receiving telemarketing solicitation text messages from Defendant Juicy's Vapor Lounge.

36. In addition, Plaintiff specifically instructed Defendant to stop sending telemarketing text messages to his cell phone, but Defendant continues to place unsolicited telemarketing text messages to Plaintiff's cell phone number, failing to honor multiple stop requests made by Plaintiff.

37. The unauthorized text messages placed by Defendant, as alleged herein, have harmed Plaintiff Schmitendorf in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

38. Seeking redress for these injuries, Plaintiff Schmitendorf, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act,

47 U.S.C. § 227, et seq., which prohibits unsolicited telemarketing calls to phone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

39. Plaintiff Schmitendorf brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Juicy's Vapor Lounge called or texted more than one time, (2) within any 12-month period, (3) where the person's phone number had been listed on the National Do Not Call Registry for at least thirty days (4) for substantially the same reason Defendant texted Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Juicy's Vapor Lounge called or texted more than one time (2) within any 12-month period (3) for substantially the same reason Defendant texted Plaintiff, (4) including at least once after the person requested that Defendant stop calling and/or texting.

40. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant has been fully and finally adjudicated and/or released. Plaintiff Schmitendorf anticipates the need to amend the Class definitions following appropriate discovery.

41. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of all the Classes.

42. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether the Defendant or an agent calling on behalf of Defendant placed multiple calls and/or text messages within a 12-month period to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

(b) whether the Defendant or an agent calling on behalf of Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(c) whether Defendant's conduct violated the TCPA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

43. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Schmitendorf nor his counsel have any interest adverse to the Classes.

44. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief

appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff Schmitendorf. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Schmitendorf and the Do Not Call Registry Class)

45. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

46. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

47. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

48. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Schmitendorf and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

49. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone solicitation in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

50. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Schmitendorf and the Internal Do Not Call Class)**

51. Plaintiff repeats and realleges the paragraphs 1 through 44 of this Complaint and incorporates them by reference herein.

52. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

53. Defendant, or an agent calling on behalf of Defendant placed calls and/or text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal

procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

54. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

55. The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Schmitendorf, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes, as defined above; appointing Plaintiff Schmitendorf as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff Schmitendorf requests Kansas City, Kansas as the place of trial.

**JURY DEMAND**

Plaintiff Schmitendorf requests a jury trial on all issues so triable.

Dated: July 26, 2022

    Respectfully submitted,

    By: */s/ M. Cory Nelson*
    M. Cory Nelson, D. Kan. # 78428
    MCN Law LLC
    12433 Antioch Rd. # 25442
    Overland Park, KS 66225
    Email: mcorynelson@mcnlawllc.com
    Tel:  913-358-5800

    *Local Counsel for Plaintiff and the putative Classes*

    Stefan Coleman
    law@stefancoleman.com
    Coleman PLLC
    66 West Flagler Street
    Suite 900
    Miami, FL 33130
    Telephone: (877) 333-9427

    Avi R. Kaufman
    KAUFMAN P.A.
    237 S Dixie Highway, Floor 4
    Coral Gables, Florida 33133
    Telephone: (305) 469-5881
    kaufman@kaufmanpa.com

    *Attorneys for Plaintiff and the putative Classes (pro hac vice motions forthcoming)*