**In the United States District Court  
for the District of Kansas**

———————

Case No. 22-cv-02293-TC-GEB

———————

BRADY SCHMITENDORF,

*Plaintiff*

v.

JUICY'S VAPOR LOUNGE, INC.,

*Defendant*

———————

**MEMORANDUM AND ORDER**

Juicy's Vapor Lounge, Inc. filed a third-party complaint against EyeRate, Inc. Doc. 20. Juicy's challenges the Magistrate Judge's Report and Recommendation that denied its request to amend insofar as it sought to revise a negligence claim. Doc. 62 (appeal); Doc. 61 (R&R). For the following reasons, the R&R is adopted as modified below and EyeRate's motion to dismiss is granted.

**I**

**A**

Three pleadings implicate several procedural standards. Each is described below.

Juicy's challenges the Magistrate Judge's Report and Recommendation. A district court must review magistrate judges' recommendations—and may review their rulings, if a party objects. Fed. R. Civ. P. 72. Recommendations require de novo review, even if the issues decided are not cleanly "dispositive" within the Rule 72 framework. Fed. R. Civ. P. 72(b)(3); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1246 (10th Cir. 2015); *Vivint, Inc. v. NorthStar Alarm Servs., LLC*, No. 216CV00106, 2018 WL 1449516, at *2 (D. Utah Mar. 23, 2018) ("The magistrate judge's decision to issue the Report and Recommendation

1

in conjunction with [an] objection to it forecloses the court's ability to conduct anything but a de novo review.").

The Magistrate Judge reviewed Juicy's request to amend its complaint. Doc. 53; Doc. 61. A party may amend its complaint "once as a matter of course no later than ... 21 days after serving it, or ... 21 days after service of a responsive pleading or 21 days after service a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A "court should freely give leave when justice so requires." *Id.*

A motion for leave to amend is futile if the amended complaint fails to state a claim. *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1217 (10th Cir. 2022). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008)

2

(comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

**B**

In this lawsuit, Schmitendorf alleged that Juicy's sent unsolicited texts to phone numbers listed on the national "Do Not Call" registry in violation of the Telephone Consumer Protection Act. Doc. 1 at ¶ 38 (citing 47 U.S.C. § 227).[1] Schmitendorf therefore seeks relief for himself and on behalf of two putative classes.

Juicy's did not send the texts by itself. It relied at least in part upon EyeRate, Inc. Doc. 20 at 12. So EyeRate, it says, is responsible for Schmitendorf's injuries. Accordingly, Juicy's filed a third-party complaint alleging three counts against EyeRate: breach of contract, negligence, and breach of warranty. *Id.* at 12–14.

The suit then proceeds in two directions. In one, Juicy's requests judgment on the pleadings with respect to Schmitendorf.[2] Doc. 33. In the other, EyeRate moves to dismiss Juicy's third-party complaint, claiming as relevant here that the negligence claim fails as a matter of law. Doc. 35. It then moves to bifurcate that dispute from Schmitendorf's original suit. Doc. 40. Juicy's submitted a short response in opposition to the motion to dismiss, Doc. 56, but not the motion to bifurcate, Doc. 54. It also moved to amend its complaint. Doc. 53. The amended complaint seeks to drop two counts, for breach of warranty and contract, and adjust the remaining negligence claim. *Id.* at 1–2. EyeRate opposed the motion to amend and restated its desire to have all of Juicy's claims dismissed with prejudice. Doc. 57.

A Magistrate Judge reviewed Juicy's motion to amend and produced a Report and Recommendation. Doc. 61. The R&R granted Juicy's unopposed request to drop Counts I and III. *Id.* at 1–2, 15. That disposes of those claims, since no party objects. Fed. R. Civ. P. 72(b); *see generally* Doc. 62.

---

[1] All citations are to the document and page number assigned in the CM/ECF system.

[2] That motion, Doc. 33, is addressed in a companion order.

3

The R&R also recommended that "Juicy's Motion, as it relates to amendment of Count II, be DENIED as futile." *Id.* at 3. Amendment would be futile, the R&R concludes, because Juicy's "negligence and *res ipsa loquitur* claims fail as a matter of [Oklahoma] law." Doc. 61 at 14. The R&R reasons that Juicy's cannot show that EyeRate should have foreseen a risk of harm to Schmitendorf. Doc. 61 at 11–13. And it concludes that, under Oklahoma law, Juicy's cannot create a negligence claim out of a breached contract. *Id.* at 14–15.

Juicy's objects to the R&R's "application of Oklahoma law," its "conclusion that the harm was not foreseeable," and its "conclusion that there is no duty to exercise reasonable care in [the] performance of a contract." Doc. 62 at 3. Eye Rate counters that the Magistrate Judge was correct in each instance—and that even if Kansas law applied, the proposed amendment would be futile. Doc. 64 at 1–2.

## II

Juicy's has twice attempted to assert a negligence claim against EyeRate. Neither the original iteration nor the proposed amended claim is viable. As a result, Juicy's objection to the R&R's denial of the motion to amend is overruled, Doc. 62, and EyeRate's motion to dismiss the original negligence claim, Doc. 34, is granted.

### A

Juicy's negligence claim—amended or otherwise—is fatally flawed. Both versions of it attempt to squeeze into the confines of state law negligence. Doc. 20 at 13; Doc. 53 at 2. These efforts fail as a matter of law because Juicy's claim is effectively a contribution claim. As a result, Juicy's objections to the Magistrate Judge's R&R, Doc. 62, are denied and EyeRate's motion to dismiss, Doc. 35, is granted.

Juicy's wanted to amend its third-party complaint outside the "matter of course," Fed. R. Civ. P. 15(a)(1), so it asked for leave, Doc. 53. A court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, a court need not give leave if the proposed amendment is futile. *See Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1218 (10th Cir. 2022). Amending a complaint is futile if the putative amended complaint fails to state a claim. *Id.* (applying the same standard as under Rule 12(b)(6)). The Magistrate Judge's R&R concluded that Juicy's amended complaint would fail to state a claim under

4

Oklahoma law. Doc. 61 at 15. The R&R therefore recommends denying the motion to amend as futile. *Id.* at 15–16.

The proposed amendment is futile, but analysis under state law is unnecessary. While couched in negligence terms, the claim seeks contribution, not damages from a breach of a duty. It does so with respect to the TCPA, a federal statute. *See* 47 U.S.C. § 227. As a result, federal law, not state law, applies. *See Olson Farms, Inc. v. Safeway Stores, Inc.*, 649 F.2d 1370, 1373 n.5 (10th Cir. 1979), *on reh'g sub nom. Olson Farms, Inc. v. Safeway Stores, Inc*, No. 77-2068, 1981 WL 15491 (10th Cir. June 30, 1981) ("[A] right of contribution arising under the federal antitrust laws is a matter of federal law."); *Friedland v. TIC-The Indus. Co.*, 566 F.3d 1203, 1208 (10th Cir. 2009) (CERCLA contribution is a federal law matter); *see also Donovan v. Robbins*, 752 F.2d 1170, 1179 (7th Cir. 1985) (collecting cases for the general proposition that contribution under a federal statute is a matter of federal law); *Territory of Guam v. United States*, 593 U.S. 310, 316 (2021) (noting that "a federal contribution action is virtually always a creature of a specific statutory regime").

Other defendants have tried—and failed—to obtain contribution for an alleged TCPA violation by couching their third-party claim as one arising under negligence principles. Each time, the district courts reject that attempt. *See, e.g.*, *Env't Progress, Inc. v. Metro. Life Ins. Co.*, No. 12-CV-80907, 2013 WL 12084488, at *2 (S.D. Fla. Apr. 1, 2013); *Carroll v. SGS N. Am. Inc.*, No. CV 16-537, 2018 WL 4001457, at *2–*3 (M.D. La. Aug. 21, 2018); *Tikotzky v. Century 21 Plaza*, No. 219CV06968, 2021 WL 11797258, at *4 (C.D. Cal. Jan. 4, 2021). Like those defendants, Juicy's construes its potential TCPA exposure as the product of someone else's negligence. It states that its "case arises out of a series of text messages sent to Plaintiff Brady Schmitendorf." Doc. 53 at 2. Schmitendorf sued Juicy's, alleging that these texts violated the TCPA. Doc. 1 at 1. But Juicy's says it "did not send these text messages itself." Doc. 53 at 2. Instead, it relied upon EyeRate. *Id.* It asked EyeRate to send Schmitendorf a single message, and EyeRate sent that message four times. Doc. 53 at 5. Thus, Juicy's says, "EyeRate's negligence is the cause of this issue." *Id.*

"[T]his issue" is Juicy's potential TCPA liability. *See* Doc. 65 at 3; *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1498 (10th Cir. 1983) ("It is well established … that impleader is proper only where the third-party defendant's liability is in some way derivative of the outcome of the main claim."). Juicy's potential liability creates a contribution issue, because "contribution is a statutory or common law right available to those

5

who have paid more than their equitable share of a common liability." *Cnty. Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1515 (10th Cir. 1991); *accord Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 87–88 (1981). That is what Juicy's ultimately seeks: it is being asked to pay for TCPA liability when EyeRate (allegedly) exposed Juicy's to that liability.

To be sure, Juicy's expressly frames its request as a negligence claim.[3] For example, it "pleads the potential judgment as part of [its] damages." *Id.* at 3. Likewise, it states that "even if Juicy's did violate the TCPA, Juicy's failure does not absolve EyeRate of its own independent [TCPA] violations, which occurred with respect to the second, third, and fourth text messages." *Id.* at 5. But these are contribution requests: the "duty" to pay one's fair share of a judgment is a duty to pay contribution. *See Territory of Guam v. United States*, 593 U.S. 310, 313 (2021) (noting, in a CERCLA case, that seeking "contribution" means seeking "money from another responsible individual"); *see also Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 285 (1952) (referencing the general rules of contribution). Juicy's nowhere identifies a duty that EyeRate owed to it that does not involve the TCPA. *See* Doc. 62 at 10–11; Doc. 65 at 3 (describing the alleged harms as the expense of litigation and Schmitendorf's potential judgment based on the alleged TCPA violations).

It seems likely that Juicy's pled its claim as a negligence issue because federal law creates no right to contribution for damages paid under the TCPA. Federal contribution claims arise two ways: "expressly" and "through the power of federal courts to fashion a federal common law of contribution." *See Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981) (citation omitted). Many courts have held that the

---

[3] It is possible for a negligence claim to overlap with a contribution claim without becoming a contribution claim. *See In re Cendant Corp. Sec. Litig.*, 166 F. Supp. 2d 1, 11 (D.N.J. 2001) (finding that independent bases for direct liability, like "diminished value of the company," supported a negligence claim even though plaintiff could have also sought contribution). Not so here. Juicy's alleged injury is that Schmitendorf has sued it for TCPA violations that are, in truth, EyeRate's violations. Doc. 65 at 3; *see also* Doc. 53-1 at ¶¶ 26–31. This is contribution by another name. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 496 (11th Cir. 1992) (applying a settlement bar because a set of "fraud and negligence claims" were "nothing more than claims for contribution or indemnification with a slight change in wording").

TCPA creates no right to contribution. *Lemieux v. Lender Processing Ctr.*, No. 16-CV-01850, 2018 WL 637945, at *2 (S.D. Cal. Jan. 31, 2018); *Glen Ellyn Pharmacy, Inc. v. Meda Pharms., Inc.*, No. 09 C 4100, 2011 WL 6156800, at *2 (N.D. Ill. Dec. 9, 2011) ("[T]he TCPA itself strongly suggests that Congress never intended to create such a right."); *Garrett v. Ragle Dental Lab'y, Inc.*, No. 10 C 1315, 2011 WL 2637227, at *1 (N.D. Ill. July 6, 2011). Those cases are persuasive, and Juicy's offers no reason to reach a different result.

Juicy's negligence and proposed amended negligence claims seek to apportion prospective TCPA liability between itself and EyeRate. This is an effort to seek contribution that the TCPA does not permit. As a result, the Magistrate Judge's R&R correctly advised denying leave to amend.

**B**

Even if the claims for negligence were not a forbidden effort to seek contribution, Juicy's claim—both the original and proposed amendment—fails to state a viable claim under negligence theories. As a result, the Magistrate Judge was correct in concluding that amendment would be futile and, as noted below, that also requires granting EyeRate's motion to dismiss, Doc. 35.

Negligence allegations sound in tort, so a threshold question is whose tort law governs. As the R&R concluded, Oklahoma's tort law does in this case. A federal court exercising jurisdiction over a diversity suit applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Thus, Kansas's choice of law rules apply. And Kansas courts deciding tort cases apply the law of the state where the alleged tort occurred. *Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985).

It can be difficult to determine where negligence occurred. For example, a tortfeasor may be negligent in one state and yet injure someone in another state. *See Draughon v. United States*, 103 F. Supp. 3d 1266, 1282 (D. Kan. 2015); *Brown v. Kleen Kut Mfg. Co.*, 714 P.2d 942, 944–45 (Kan. 1986). This situation often arises with financial injuries. So "[w]hen a plaintiff alleges financial injury, the court looks to the law of the state in which the plaintiff felt that financial injury." *Hermelink v. Dynamex Operations E., Inc.*, 109 F. Supp. 2d 1299, 1303 (D. Kan. 2000) (collecting cases); *see also Ling v. Jan's Liquors*, 703 P.2d 731, 735 (Kan. 1985).

Juicy's alleges a financial injury. That injury is contingent, as in the typical interpleader case: if Juicy's is found negligent it must pay Schmitendorf. *See* Doc. 62 at 10–11; Doc. 65 at 3. Juicy's will experience that injury, if at all, when it satisfies a judgment in Schmitendorf's case. Juicy's will do so in Oklahoma, even if the judgment is entered in Kansas. Doc. 61 at 9 (noting that Juicy's is an Oklahoma corporation with its principal place of business in Oklahoma); *contra* Doc. 65 at 3 (arguing that the injury is entry of judgment itself).

So accepting for purposes of argument that Juicy's has a viable negligence claim, the R&R correctly applied Oklahoma law. Doc. 61. Oklahoma law treats the parties' arguments about duty as a matter of "foreseeability." *Schovanec v. Archdiocese of Oklahoma City*, 188 P.3d 158, 172–73 (Okla. 2008). Foreseeability is a question of law. *Id.* (noting that Oklahoma uses "foreseeability" to describe both duty, a legal question, and proximate cause, a factual question); *contra* Doc. 62 at 9. It settles "whether a defendant owes a plaintiff a duty of care." *Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty.*, 60 P.3d 497, 502 (Okla. 2002). A defendant's duty of care extends over "all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." *Id.*

Juicy's contends that it was unreasonably dangerous for EyeRate to send a "third and fourth text message[] after receiving [Schmitendorf's] opt-out request." *See* Doc. 62 at 6. Likewise, it was unreasonably dangerous not "to inform Juicy's of the opt-outs." *Id.* at 7. It was even unreasonably dangerous, Juicy's says, for EyeRate to send multiple messages knowing "that it was only asked to send" a single message. *Id.* These actions allegedly create a risk that individuals will blame EyeRate's customers when they receive EyeRate's messages. *See* Doc. 62 at 7–8.

The R&R concluded that this risk was not foreseeable. It reasoned that "EyeRate could not foresee that Juicy's would completely ignore the [TCPA's] mandates … and use EyeRate's platform to send promotional text messages to the telephone number of a person who never consented to the receipt of such marketing texts and whose telephone number is registered on the national 'do not call' list." Doc. 61 at 12–13. In other words, EyeRate had no duty to help Juicy's comply with the TCPA because it could not foresee that Juicy's would use its service to violate the TCPA.

8

The R&R's conclusion is sound. Effectively, Juicy's says that it was negligent for EyeRate to magnify Juicy's alleged TCPA violation by sending three extra texts. Yet the TCPA operates like a strict liability rule. *Park Univ. Enterprises, Inc. v. Am. Cas. Co. of Reading, PA.*, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004), *aff'd sub nom. Park Univ. Enterprises, Inc. v. Am. Cas. Co. Of Reading, PA*, 442 F.3d 1239 (10th Cir. 2006). EyeRate might want to avoid violating the TCPA through its own conduct, but that does not impose a duty to police numbers that others add to its system. Nor does it impose a duty to warn customers about adding forbidden numbers. Nothing suggests that EyeRate's platform encouraged TCPA violations, and it is not "unreasonably dangerous" to expect that users will monitor their own legal risks. *Iglehart*, 60 P.3d at 502 (noting that a defendant's duty of care extends over "all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous"); *cf. Mansfield v. Circle K. Corp.*, 877 P.2d 1130, 1134 (Okla. 1994) (reasoning that alcohol vendors can foresee harm to minors who violate the law by purchasing and consuming alcohol).

Thus, the R&R correctly concluded that Juicy's amended negligence allegations failed to state a claim. Doc. 61 at 13–14. The same is true of its original allegations, Doc. 20 at 13, ¶¶ 14–17, so EyeRate's motion to dismiss, Doc. 35, is granted.[4]

### III

For the foregoing reasons, the R&R, Doc. 61, is ADOPTED AS MODIFIED above. Juicy's Motion for Review, Doc. 62, and Motion for Leave to Amend, Doc. 53, are DENIED. EyeRate's Motion to Dismiss, Doc. 35, is GRANTED and Juicy's Third-Party Complaint, Doc. 20, is DISMISSED without prejudice. EyeRate's Motion to Bifurcate, Doc. 40, is DENIED as moot.

It is so ordered.

Date: March 6, 2024           s/ Toby Crouse
                              Toby Crouse
                              United States District Judge

---

[4] This means that EyeRate's motion to bifurcate, Doc. 40, is denied as moot. Juicy's has no remaining claims against EyeRate which could be bifurcated. *See* Doc. 61 at 1–2 (granting Juicy's request to abandon Counts I and III).